IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

K&V SCIENTIFIC CO., INC.,
a New Mexico Corporation,

      Plaintiff,

v.                                       No. CIV 00-1615 BB/DJS

BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT ("BMW"),
a corporation organized and existing under
the laws of Germany,

      Defendant.

## OPINION

THIS MATTER comes before the Court on Defendant's Motion to Dismiss (Doc. 13),

filed February 13, 2001.  The Court has examined the parties' submissions and the relevant

authorities, and, for the reasons set forth below, finds that Defendant's motion should be

GRANTED.

## I.
## BACKGROUND

Plaintiff K&V Scientific Company, Inc. ("K&V") brings this suit for breach of contract

based on the alleged appropriation of trade secrets by Defendant Bayerische Motoren Werke

Aktiengesellschaft, the German manufacturer of BMW automobiles.  BMW removed this action

pursuant to 28 U.S.C. § 1441(a) and it is now properly before this Court.

K&V is a two-person corporation located in Los Alamos, New Mexico, owned by Mr. Alan Kammerman and his wife Rosalie.  Mr. Kammerman is a talented engineer and scientist who specializes in marrying differing technologies.  Specifically, Mr. Kammerman has focused on the application of semiconductor bridge technology to automobile airbag ignition, a process designed to make the discharge of airbags safer and more reliable.  Semiconductor bridge technology was developed at Sandia National Laboratories for defense purposes and was a "tech transfer" to SCB Technologies ("SCBT"), a local corporation acquired in 1995 by Ensign-Bickford Company.  Ensign-Bickford and SCBT were unsuccessful in applying the semiconductor bridge to automobile airbags and, as a result, developed a relationship with K&V.  SCBT encouraged K&V's research and executed a series of confidentiality agreements designed to protect K&V's work and facilitate K&V's communications with the auto industry.

At some point during 1996, Mr. Kammerman was introduced to Josef Mahalek, BMW's engineering manager.  Mr. Mahalek expressed enthusiasm for K&V's research and discussed working with K&V to adapt the new airbag technology to BMW's existing system.  In July 1996, Mr. Kammerman submitted a confidentiality agreement to BMW which provided for the protection of trade secrets exchanged between the parties ("1996 Agreement").  The agreement, which contained no provision regarding proper venue or choice of law, was signed by representatives of BMW in Munich.  BMW later decided K&V's confidentiality agreement was unacceptable, and, in January 1997, Mr. Mahalek submitted a second contract to Mr. Kammerman ("1997 Agreement").  This agreement contained the following forum selection clause, which forms the heart of the parties' present dispute:  "Jurisdiction for all and any dispute arising out of or in connection with this agreement is Munich.  All and any dispute arising out of

-2-

or in connection with this agreement are [sic] subject to the laws of the Federal Republic of Germany." The new confidentiality agreement was signed and returned by K&V without discussion.

Following the execution of the parties' initial 1996 agreement, Mr. Mahalek sent BMW's confidential airbag igniter specifications to K&V. K&V alleges that, based on BMW's assurances that a development contract was forthcoming, Mr. Kammerman commenced research and development of the airbag igniter project without compensation. Over the following months K&V completed the engineering milestones set by BMW, and BMW sent continuous requests that K&V perform more work on the project. At BMW's behest, Mr. Kammerman traveled to Munich in the spring of 1997 to educate BMW regarding K&V's new technology; BMW again allegedly assured Mr. Kammerman there would be no difficulty agreeing on a contract, including compensation for the work already performed, and informed Mr. Kammerman that the contract should include production as well as development. K&V enlisted Ensign-Bickford and SCBT as its production partners in the project. Mr. Kammerman continued to press forward on the project without a contract on faithful belief that, with the confidentiality agreements in place, neither Ensign-Bickford nor BMW could benefit from his research without justly compensating K&V. As the complaint alleges, "K&V and Kammerman were confident that BMW intended to strike a commercially reasonable and fair level of compensation" as "under the confidentiality agreement, BMW was legally powerless to proceed without K&V's consent."

At some point after Ensign-Bickford joined the airbag ignition project, it is alleged that BMW and Ensign-Bickford agreed K&V's services were no longer necessary. Mr. Kammerman, oblivious to the larger corporations' intentions, continued to prepare for an upcoming meeting

among the participants.  In turn, BMW allegedly continued to assure Mr. Kammerman that K&V's role in the project, as well as compensation issues, would be resolved.   At that meeting, which took place in New Mexico in August 1997, BMW first insisted on a private consultation with Ensign-Bickford and SCBT.  When Mr. Kammerman later met with representatives of BMW he was informed that BMW would neither contract with K&V nor compensate K&V for the development work Mr. Kammerman had performed.

It is undisputed that BMW has entered into a development contract with SCBT and Ensign-Bickford.[1]  Although BMW maintains it has not violated its confidentiality agreements with K&V, K&V claims that the airbag ignition project employs the technology developed so arduously by Mr. Kammerman.  K&V also asserts that, because Mr. Kammerman devoted virtually all of his time and resources to BMW, the company is now deep in debt and devoid of all assets.  Per Mr. Kammerman's estimate, he has invested over $1,000,000 in resources and labor to the project.  K&V therefore brings this suit based on BMW's alleged violation of the companies' confidentiality agreements.

BMW has filed a motion to dismiss on the grounds that the forum selection clause in the 1997 Agreement divests this Court of jurisdiction, or, in the alternative, that this Court lacks personal jurisdiction.  Because the Court finds the forum selection clause to be valid and enforceable, we do not reach the question of personal jurisdiction.

---

[1]K&V and Ensign-Bickford are currently involved in similar litigation in Connecticut.

-4-

## II.
## DISCUSSION

**A.     Effect of 1997 Agreement**

Initially, the Court must determine the effect of the parties' successive confidentiality agreements.  K&V's complaint alleges that BMW breached both the 1996 and 1997 Agreements, and K&V argues that, because the 1996 Agreement contains no forum selection clause, venue is proper in this Court under that contract.

Standard principles of contract law, however, dictate otherwise.  When two parties execute a second contract that deals with the same subject matter as the first, the two contracts must be interpreted together; insofar as the contracts are inconsistent, the later one prevails.  6 Arthur L. Corbin, Corbin on Contracts, §§ 1293 and 1296 (1962); see also Restatement (Second) of Contracts § 279 and cmt. a.[2]  This rule is best summarized by Corbin:

> The new agreement may make no reference to the previous contract or claim; and yet it may operate as a substituted contract.  If the new agreement contains terms that are clearly inconsistent with the previously existing contract or claim, the fact of inconsistency is itself a sufficient indication of intention to abrogate the old and substitute the new.  The inconsistency may exist as to the whole of the former contract or claim or only as to a part.  It operates as a discharge by substitution only so far as the inconsistency extends.

Corbin on Contracts at § 1296.  Here, the 1997 Agreement was substituted for the 1996 Agreement.  Both contracts address the fundamental subject matter of trade secret protection but

---

[2]This doctrine, the substitution of contracts, has been characterized in New Mexico as the doctrine of merger.  Both stand for the proposition that, in the case of subsequent inconsistent contracts, the later contract governs.  See Superior Concrete Pumping, Inc. v. David Montoya Const., Inc., 108 N.M. 401, 404, 773 P.2d 346, 349 (N.M. 1989) ("The doctrine of merger is a contract principle that prior agreements on the same subject are presumed to be included in the final contract.  Merger applies only to successive agreements that contain inconsistent terms.  Under these conditions, an antecedent agreement is deemed to have merged into the more recent contract" (citations omitted)).

the second carries explicit supplemental terms:  specifically, the 1997 Agreement designates both a choice of law and a choice of forum while the original agreement is silent as to both.[3]  It is immaterial that the successive contract makes no reference to the original.  Because the inconsistent terms of the later, substituted contract prevail, the forum selection clause is applicable to both Agreements.

Furthermore, the Court finds that all of K&V's claims against BMW, including those claims in tort and quasi-contract, are governed by the forum selection clause contained in the 1997 Agreement.  The general rule is that when an action arises from a contract or contractual relationship between two parties the choice of forum clause in that contract governs the parties' tort as well as contract claims.  Terra Int'l, Inc. v. Mississippi Chemical Corp., 199 F.3d 688, 693-95 (8th Cir. 1997); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988); Crescent Int'l, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944-45 (3d Cir. 1988); Allied Sound, Inc. v. Dukane Corp., 934 F.Supp. 272, 276 (M.D. Tenn. 1996); Vijuk Equipment, Inc. v. Otto Hohner KG, 728 F.Supp. 1368, 1371 (N.D. Ill. 1990).  Here, the parties' forum selection clause applies to "all and any dispute arising out of or in connection with" the 1997 Agreement.  The Court finds, and K&V does not contest, that each of K&V's tort claims arises in connection with the parties' contract.[4]

---

[3]Although the inclusion of the forum selection clause forms the basis of this dispute, the two contracts contain additional inconsistent terms which suggest the parties' intent to rescind the original agreement and substitute the new:  e.g., the 1996 Agreement expires on July 3, 2001, while the 1997 Agreement states that the parties' confidentiality obligations extend through the termination of the project.

[4]K&V's claims for fraud and quantum meruit merit specific discussion.  First, K&V alleges that it was fraudulently induced to enter the 1997 Agreement because BMW never intended to honor its obligations under the contract.  In order to circumvent the forum selection clause, however, K&V must plead that the specific clause, as opposed to the entire contract, was

**B.      Forum Selection Clause**

BMW properly characterizes its motion to dismiss based on the forum selection clause as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).  Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992); see also 17 James W. Moore et. al., Moore's Federal Practice, § 111.04[3][b][i] (3d ed. 2001).  In federal question cases, federal courts analyze the validity of forum selection clauses under the familiar standards set forth by the Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  See Riley, 969 F.2d at 957; Black & Veatch Const., Inc. v. ABB Power Generation, Inc., 123 F.Supp.2d 569, 579-80 (D. Kan. 2000).  However, there is a split among the circuits regarding the proper law to be applied when, as here, a federal court sits in diversity.  The Court's first task is therefore to address the unsettled question of whether state or federal law governs the scope and enforceability of the forum selection clause.

**1.      The Erie Question**

The Court's approach to this threshold issue is dictated by the doctrine of Erie Railroad v. Tompkins, 304 U.S. 64 (1938), and its progeny.  See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 512 (9th Cir. 1988).  Erie instructs that federal district courts sitting in diversity should apply state law to substantive issues and federal law to procedural issues.  This

---

obtained by fraud.  Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974) (the fraud exception "means that an arbitration or forum- selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"); Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 960 (10th Cir. 1992).  Second, K&V's quasi-contract claim for quantum meruit arises in connection with the parties' confidentiality agreement because the extent to which B&W has been unjustly enriched depends, in part, on whether BMW has appropriated K&V's trade secrets in violation of the agreement.  See Manetti-Farrow, 858 F.2d at 514 ("[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract").

doctrine was extended in Hanna v. Plumer, 380 U.S. 460 (1965), to encompass federal procedural rules:  to the extent that Congress has enacted procedural "housekeeping" rules for federal courts, the federal rule governs over state rules or common law policy.  However, the Supreme Court has not yet determined whether the enforceability of forum selection clauses is a substantive or procedural matter for the purposes of Erie.  The Court addressed the subject in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988), holding that federal law governs the interpretation of forum selection clauses in transfers of venue under 28 U.S.C. § 1404(a). Because the Court found that § 1404(a) controls forum selection clauses providing for transfer to a different federal venue, it was unnecessary to resolve the Erie analysis:  "A district court's decision whether to apply a federal statute such as § 1404(a) in a diversity action...involves a considerably less intricate analysis than that which governs the 'relatively unguided Erie choice.'" Stewart, 487 U.S. at 26 (quoting Hanna, 380 U.S. at 471).[5]  The Stewart holding is therefore limited to those forum selection clauses which provide for transfer to a different federal forum: the case is inapplicable to forum selection clauses designating venue in a state or foreign court.  See Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990); Young Lee, Note, Forum Selection Clauses: Problems of Enforcement in Diversity Cases and State Courts, 35 Colum. J. Transnat'l L. 663, 671-672 (1997).  Because no federal rule or statute governs transfers to state or foreign forums, courts faced with such forum selection clauses are left with "the sticky question of which law, state or federal, will govern various aspects of the decisions of federal courts sitting in diversity." Stewart, 487 U.S. at 25-26 (quoting Stewart Organization, Inc. v. Ricoh Corp., 779 F.2d 643,

---

[5]Notably, the Court also held that the presence of a forum selection clause is but one factor to be considered by a district court when determining the fairness and convenience of a transfer of venue under § 1404(a).  Id. at 29-30; see also Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990).

645 (11th Cir. 1986)); see also Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd., 859 F.2d 4, 6-7 (3rd Cir. 1988).[6]

Although several circuits have addressed the question of whether forum selection clauses are substantive or procedural for purposes of Erie, the Tenth Circuit has yet to resolve the issue. The court has, on two occasions, analyzed a forum selection clause in a diversity action and alluded to the difficulties posed by Erie. See Dawson v. Fitzgerald, 1999 WL 651413, **2 (10th Cir. Aug. 26, 1999); Excell, Inc. v. Sterling Boiler and Mechanical, Inc., 106 F.3d 318, 320 (10th Cir. 1997). Because the law of the forum state did not substantively differ from federal common law, the court did not reach the Erie question: "The parties have not discussed whether Colorado state law or federal common law controls the validity and interpretation of the forum selection clause. Because we believe there are no material discrepancies between Colorado law and federal common law on these matters, we find it unnecessary to decide the issue." Excell, 106 F.3d at 320 (citations omitted). See also Shell v. R.W. Sturge, 55 F.3d 1227, 1229 (6th Cir. 1995) (finding decision unnecessary because Ohio law and federal common law treated forum selection clauses in similar manner); Lambert v. Kysar, 983 F.3d 1110, 1116 (1st Cir. 1993) ("[A]s we discern no material discrepancy between Washington state law and federal law, we need confront neither the choice-of-law issue nor the daunting question whether forum selection clauses are to

---

[6]This "sticky question" has, "not surprisingly," provoked substantial conversation and consternation among legal scholars. See Stanley E. Cox, Case One: Choice of Forum Clauses, 29 New Eng. L. Rev. 517 (Spring 1995) (views of eight conflict scholars); Allan R. Stein, Erie and Court Access, 100 Yale L.J. 1935, 1983-85 (May 1991); Earl M. Maltz, Choice of Forum and Choice of Law in the Federal Courts: A Reconsideration of Erie Principles, 79 Ky. L.J. 231 (Winter 1990-1991); Linda S. Mullenix, Another Choice of Forum, Another Choice of Law: Consensual Adjudicatory Procedure in Federal Court, 57 Fordham L. Rev. 291, 299 (December 1988); Julia L. Erickson, Comment, Forum Selection Clauses in Light of the Erie Doctrine and Federal Common Law: Stewart Organization v. Ricoh Corporation, 72 Minn. L. Rev. 1090, 1122 (May 1988).

be treated as substantive or procedural for <u>Erie</u> purposes"). Unfortunately, this path does not

appear open in the case at bar. Careful analysis leads to the conclusion that German law governs,

and this Court cannot say with certainty that either New Mexico law or German law materially

complies with federal common law.[7]

This Court thus finds itself in the unavoidable and unenviable position of having to resolve

the <u>Erie</u> question. When forced to decide whether the enforceability of forum selection clauses is

a substantive or procedural issue for purposes of <u>Erie</u>, the circuit courts of appeal are divided into

---

[7]First, while New Mexico strongly supports the validity of choice of law clauses, <u>see</u>, <u>e.g.</u>, <u>Resolution Trust Corp. v. Ocotillo West Joint Venture</u>, 840 F.Supp. 1463, 1479 (D.N.M. 1993), <u>United Wholesale Liquors Co. v. Brown-Forman Distillers Corp.</u>, 108 N.M. 467, 471, 775 P.2d 233, 237 (N.M. 1987), the state has not spoken to forum selection clauses. Second, the parties' confidentiality agreement includes a choice of law clause which provides that disputes are "subject to the laws of the Federal Republic of Germany." This introduces an additional step to the conflict of laws analysis: if state and not federal, law governs the interpretation of the forum selection clause, is New Mexico law or German law properly applied? Courts faced with this question have reached varied results. <u>See</u>, <u>e.g.</u>, <u>Shell</u>, 55 F.3d at 1229 (assuming Ohio law would govern enforceability of forum selection clause, notwithstanding contract provision requiring application of English law); <u>Instrumentation Associates</u>, 859 F.2d at 7 (unclear whether federal, Pennsylvania, or Canadian law applies in face of Canadian choice of law provision); <u>Central Coal Co. v. Phibro Energy, Inc.</u>, 685 F. Supp. 595, 596-97 (W.D.Va. 1988) (because choice of law clause provided for application of New York law, New York law governed interpretation of forum selection clause). The strongest argument favors the application of German law. The last act necessary for the 1997 Agreement's formation was performed in New Mexico. Accordingly, under the doctrine of <i>lex loci contractus</i>, New Mexico law would normally apply to the contract's interpretation. <u>See</u> <u>State Farm Mut. Ins. Co. v. Conyers</u>, 109 N.M. 243, 248, 784 P.2d 986, 991 (N.M. 1989). However, the parties have agreed that the contract should be interpreted according to the laws of Germany; and, as previously noted, New Mexico heavily favors the enforcement of choice of law provisions. German law should therefore govern the scope and enforceability of the forum selection clause.

Once the Court has successfully completed this exercise in intellectual gymnastics, it is still faced with two competing affidavits from German attorneys who differ regarding the scope of the forum selection clause under German law. BMW has submitted an affidavit stating that, under German law, the clause is mandatory and enforceable. Not surprisingly, K&V has responded with a contradictory statement from a German lawyer who tells us that the clause is permissive, i.e., that jurisdiction <i>may</i> lie in Munich, but that it may also lie elsewhere. The Court is indisposed to make conclusions regarding German law in the absence of an in-depth comparative law analysis.

two camps.  A clear majority of the circuits has concluded that forum selection clauses are a procedural venue matter to be governed by federal common law.  Relying on the Eleventh Circuit's reasoning in Stewart Organization, Inc. v. Ricoh Corp., 810 F.2d 1066 (11th Cir.) (per curiam) (en banc), aff'd on other grounds, 487 U.S. 22, 32 (1988), the Ninth Circuit concluded that the application of federal law to the interpretation and enforcement of forum selection clauses meets "the twin aims of the Erie rule:  discouragement of forum-shopping and avoidance of inequitable administration of the laws."  Manetti-Farrow, 858 F.2d at 513 (9th Cir. 1988) (quoting Hanna v. Plumer, 380 U.S. 460, 471 (1965)).[8]  Accordingly, the Ninth Circuit found that "the federal procedural issues raised by forum selection clauses significantly outweigh the state interests, and the federal rule announced in The Bremen controls enforcement of forum selection clauses in diversity cases."  858 F.2d at 513.  See also Spradlin v. Lear Siegler Management Services Co., 926 F.2d 865, 867 (9th Cir. 1991) (reiterating holding of Manetti-Farrow).  The Second Circuit, citing Manetti-Farrow, has concluded that the enforcement of forum selection clauses is a procedural question of venue and therefore that "Bremen applies with equal force in diversity cases."  Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990).  The Fifth Circuit has also joined the circuits that hold The Bremen standard applies.  Int'l Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 114-115 (5th Cir. 1996).

_____

[8]As previously discussed, the Supreme Court affirmed the Eleventh Circuit's en banc decision in Stewart on the grounds that, because there was a federal statute directly on point (28 U.S.C. § 1404(a)), the district court was required to apply federal law to the enforcement of the forum selection clause.  The Supreme Court therefore found it unnecessary to reach the Erie analysis.  However, the Eleventh Circuit's dicta regarding the general applicability of federal common law in diversity cases nonetheless remains.  As the Ninth Circuit observed: "The Eleventh Circuit's en banc decision in Stewart...is helpful because is explains why federal law applies as a general principle to enforce forum selection clauses, without addressing the application of § 1404(a)."  Manetti-Farrow, 858 F.2d at 512, n.2.

The Third Circuit stands in the middle and appears to be in a state of flux.  Most recently, in Jumara v. State Farm Ins. Co., the Third Circuit cited the reasoning of the Second Circuit in concluding that the interpretation of forum selection clauses is a matter of federal common law: "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law.  Because 'questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature' (quoting Jones, 901 F.2d at 19), federal law applies in diversity cases irrespective of Erie Railroad v. Tompkins." 55 F.3d 873, 877 (3d Cir. 1995).  Despite its broad dicta, however, the Jumara holding, like the Supreme Court's holding in Stewart, is specifically applicable only to transfers under the federal venue statute.  Interestingly, Jumara does not overrule General Eng'g Corp. v. Martin Marietta Alumina, Inc., in which the Third Circuit relied on the principle that federal courts are able to create common law only in those areas where Congress or the Constitution have given the courts authority to do so, such as admiralty[9]:  "We must correct the assumption that federal courts are bound as a matter of federal common law to apply The Bremen standard to forum selection clauses.  The construction of contracts is usually a matter of state, not federal, common law." 783 F.2d 352, 356-57 (3d Cir. 1986).

Only the Fourth and the Eighth Circuits currently appear commited to the proposition that the enforceability of forum selection clauses is a substantive matter for purposes of Erie, to be determined under state law.  See Nutter v. New Rents, Inc., 1991 U.S. App. LEXIS 22952 (4th Cir. Oct. 1, 1991) (enforceability of forum selection clause governed by West Virginia law, state in which district court sits); Farmland Industries v. Frazier-Parrott Commodities, Inc., 806 F.2d

---

[9]See, e.g., The Bremen, 407 U.S. at 1; Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991).

848, 852 (8th Cir. 1986), abrogated on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989) ("Whether a contractual forum selection clause is substantive or procedural is a difficult question....Because of the close relationship between substance and procedure in this case we believe that consideration should have been given to the public policy of Missouri").[10]  See also Lee, supra, 35 Colum. J. Transnat'l L. at 674-676 (finding that, under twin aims of Erie, state law should apply in diversity cases).

Many courts, including the Tenth Circuit, have avoided this legal swamp by applying The Bremen standard in diversity cases with no discussion of Erie.  See, e.g., Nauert v. Nava Leisure U.S.A., Inc., 2000 WL 381509 (10th Cir. April 14, 2000) (applying The Bremen and progeny to enforce forum selection clause designating Italy as exclusive forum); John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distrib. Inc., 22 F.3d 51 (2d Cir. 1994); Paper Express, Ltd., v. Pfankuch Maschinen GmbH, 972 F.2d 753 (7th Cir. 1992); Pelleport Investors v. Budco Quality Theaters, 741 F.2d 273 (9th Cir. 1984); see also 17 James W. Moore et. al., Moore's Federal Practice, § 111.04[3][c] (3d ed. 2001) ("[t]he majority of federal courts addressing motions to dismiss based on forum selection clauses apply federal law, i.e., The Bremen rule, as

---

[10]Farmland Industries is a recession from the Eighth's Circuits earlier holding in Sunworld Lines, Ltd. v. March Shipping Corp., 801 F.2d 1066, 1068-69 (8th Cir. 1986), in which the court determined that forum selection clauses should be enforced according to federal law: "[V]iewing this as a diversity case, state law binds us only on substantive issues.  Otherwise, federal law controls under the Erie doctrine.  The enforceability of a forum selection clause concerns both the substantive law of contract and the procedural law of venue....Faced with the conflict, federal district courts in Missouri have consistently held that the enforceability of a forum clause (venue limitation) is clearly a federal procedural issue and that federal law controls (citations omitted).  In affirming the position of the Missouri district court that forum selection is a procedural matter, we support a policy of uniformity of venue rules within the federal system, as well as the policies underlying The Bremen."  The Farmland court found, however, that this holding was not essential to the outcome because the Sunworld court had already determined admiralty law was at issue; therefore, under federal common law, the forum selection clause was valid.  806 F.2d at 852.

-13-

opposed to state law, to the question of the enforceability of the clause").[11]  This gives credence to the majority position that the enforcement of forum selection clauses is a procedural question of venue appropriately governed by federal common law.

A distinct majority of federal circuits have determined that, pursuant to the <u>Erie</u> doctrine, the enforcement of forum selection clauses is a procedural rather than substantive issue.  The Court agrees with the analysis set forth in <u>Manetti-Farrow</u> and subsequent cases.  Moreover, recognizing that forum selection is a procedural matter both encourages uniform treatment of venue rules among the federal courts and reinforces the Tenth Circuit's strong predilection for enforcing these clauses.  <u>See</u>, <u>e.g.</u>, <u>Excell</u>, 106 F.3d at 321; <u>Riley</u>, 969 F.2d at 958.  The Court therefore finds that federal common law governs the interpretation and enforcement of forum selection clauses in diversity cases.

## 2.    Scope of the Clause

Forum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.  <u>The Bremen</u>, 407 U.S. at 10; <u>Riley v. Kingsley Underwriting Agencies, Ltd.</u>, 969 F.2d 953, 957 (10th Cir. 1992); <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d 1342 (10th Cir. 1992).  The Tenth Circuit, like the Supreme Court, has unequivocally held that choice of law and forum selection clauses in international agreements are to be given effect.  <u>Riley</u>, 969 F.2d at 957 (citing <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 593-595 (1991)); <u>Mitsubishi Motors Corp. v. Soler Chrysler-</u>

---

[11]Like the Tenth Circuit, the First Circuit has chosen not to undertake the complex <u>Erie</u> analysis because, in cases thus far before the court, the law of the selected forum has not materially differed from federal common law.  <u>See</u> <u>Silva v. Encyclopedia Britannica Inc.</u>, 239 F.3d 385, 386-87 (1st Cir. 2001); <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1116 (1st Cir. 1993).  <u>But see</u> <u>Stereo Gema, Inc. v. Magnadyne Corp.</u>, 941 F.Supp. 271 (D.P.R. 1996) (holding that enforceability of forum selection clauses is a procedural issue governed by federal law).

Plymouth, Inc., 473 U.S. 614, 631 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 519-20 (1974); The Bremen, 407 U.S. at 10).  As the Supreme Court emphasized in The Bremen:  "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our court."  407 U.S. at 10.  Thus the party seeking to invalidate a forum selection clause has a heavy burden.  Id.; see also Cruise v. Castleton, Inc., 449 F.Supp. 564 (S.D.N.Y. 1978).  Nevertheless, the Court recognizes that a waiver of jurisdiction must be "clear and unequivocal" and that ambiguity in a clause must be construed against the drafter, in this case, BMW.  Milk 'N' More, 963 F.2d at 1346.

      In analyzing the scope of forum selection clauses, courts frequently classify clauses as either permissive or mandatory.  Mandatory forum selection clauses are those which "contain clear language showing that jurisdiction is appropriate only in the designated forum."  Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997) (citations omitted).  In contrast, "permissive forum selection clauses authorize jurisdiction in a designated forum, but do not 'prohibit litigation elsewhere.'"  Id.  The effect of forum selection clauses is a question of contract interpretation.  Milk 'N' More, 963 F.2d at 1345.

      Applying federal law to the forum selection clause in the present dispute, the Court looks to the language of the forum selection and choice of law clause in the parties' 1997 Agreement, which states as follows:  "Jurisdiction for all and any dispute arising out of or in connection with this agreement is Munich.  All and any dispute arising out of or in connection with this agreement are [sic] subject to the laws of the Federal Republic of Germany."  The central issue is whether this clause is permissive or mandatory.  K&V argues vigorously that the clause is permissive and

therefore does not oust this Court of jurisdiction; BMW, naturally, contends that the clause is mandatory and venue lies solely in Munich.

A survey of cases addressing the permissive/mandatory distinction reveals a distinct lack of cohesion among federal decisions.  Compare, e.g., Paper Express, Ltd. v. Pfankuch Maschinen, GmbH, 972 F.2d 753, 756 (7th Cir. 1992) (clause stating "warranty:  6 months according to the rules of [the German machine manufacturer's union]" interpreted as a mandatory forum selection clause requiring suit in Germany); with Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231, 1232 (11th Cir. 1985) (forum selection clause stating "place of jurisdiction is Sao Paulo/Brazil" ambiguous, and therefore permissive).  Much of the parsing of contract language can fairly be viewed, as described by BMW, as "semantic hairsplitting."  Given the inconsistency of cases in this area, the Court looks to the Tenth Circuit, and we find the interpretation of the forum selection clause in Milk 'N' More to be particularly instructive.  That clause, "venue shall be proper under this agreement in Johnson County, Kansas," presents more ambiguity than the language currently before this Court, "jurisdiction...is Munich."  Arguably, "shall be proper" suggests a permissive interpretation:  i.e., that venue is appropriate in Johnson County, Kansas, but is also appropriate elsewhere.[12]  The Tenth Circuit, however, found the language "shall be proper" to be mandatory:  "[T]he provision...seems reasonably clear and the wording strongly

---

[12]Cf. John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors Inc., 22 F.3d 51, 52-53 (2d Cir. 1994) (forum selection clause stating "[a]ny dispute...shall come within the jurisdiction of the competent Greek courts, specifically of the Thessaloniki Courts" permissive); Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127-28 (5th Cir. 1994) ("the laws and courts of Zurich shall be applicable" permissive); Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1988) ("the language ['courts of California, County of Orange, shall have jurisdiction over the parties'] says nothing about the Orange County courts having exclusive jurisdiction.  The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts"); Andrews v. Heinold Commodities, Inc., 771 F.2d 184, 197 (7th Cir. 1985) ("place of jurisdiction shall be Dresden" permissive).

points to the state court of [Johnson County].  The use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made."  963 F.2d at 1346.  Nor is Milk 'N' More an isolated opinion;  the Tenth Circuit has reaffirmed this interpretation on three separate occasions.  See Dawson v. Fitzgerald, 1999 WL 651413, **3 (10th Cir. Aug. 26, 1999) ("venue is proper in the District Court of Eagle County, Colorado" mandatory);  SBKC Service Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 581-82 (10th Cir. 1997) ("an action *may be maintained* in the State of Kansas and the County of Wyandotte" permissive; distinguishing Milk 'N' More) (emphasis added); Excell, 106 F.3d at 320-21 ("jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso , Colorado" mandatory).

Particularly in light of this Tenth Circuit jurisprudence, the Court believes the parties' forum selection clause, "jurisdiction...is Munich," is unambiguous.  This holding also finds support in other circuits.  The Seventh Circuit, for example, found a very similar forum selection clause, "place of jurisdiction...is the registered office of the trustee [Germany], to the extent permissible under the law," to be mandatory.  Frietsch v. Refco, 56 F.3d 825, 829 (7th Cir. 1995).  Judge Posner found the plaintiff's argument that the clause was permissive "implausible.  The absence of the indefinite article (the clause says "place of jurisdiction" is Germany, not "a place of jurisdiction" is Germany) implies that there is only one place of jurisdiction." Id.[13]

However, as K&V posits, "the general rule in cases containing forum selection clauses is that 'when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'"  John Boutari and Son, 22 F.3d at 52 (quoting Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir.

---

[13]Unlike the Seventh Circuit, the Eleventh Circuit in Citro Florida found the forum selection clause "place of jurisdiction is Sao Paulo/Brazil" to be ambiguous.  760 F.2d at 1232.

1989)); see also Paper Express, 972 F.2d at 757; Hunt Wesson Foods, 817 F.2d at 77-78.  From

this, K&V reasons that either the specific designation of "venue" or the mandatory language

"exclusive" is required.  See, e.g., Docksider, 875 F.2d 762 ("*venue of any action brought*

*hereunder* shall be deemed to be in Gloucester County, VA" is "mandatory language mak[ing]

clear that venue, the place of suit, lies exclusively in the designated county") (emphasis added);

Hunt Wesson Foods, 817 F.2d at 77 (the language "'Orange County courts shall have jurisdiction

over this action'...says nothing about the Orange County courts having *exclusive* jurisdiction")

(emphasis added).  The Court must disagree.[14]  In this case, the parties have included a choice of

law clause stating that German law governs any dispute arising from the Agreement.  This clause

supports the interpretation that jurisdiction is to be located exclusively in a court best suited to

interpret and apply German law, e.g., Munich.  See Samson Plastic Conduit and Pipe Corp. v.

Battenfeld Extrusionstechnik GmbH, 718 F. Supp. 886, 891-92 (M.D. Ala. 1989) (mandatory

forum selection clause, "court of jurisdiction for both contracting parties...is the court competent

to deal with [German corporation's] head office," supported by clause stating that German law

governs the legal relationship between the contracting parties).  Cf. Frietch, 56 F.3d at 829; Paper

Express, 972 F.2d at 756-57.  In addition, the 1997 Agreement references German criminal

---

[14]At the same time, the Court recognizes that BMW is a sophisticated global company
with ample legal resources to devote to its international contracts.  BMW would be well-advised
to study American jurisprudence and draft forum selection clauses including specific "exclusivity"
language, so as to leave no doubt regarding the clauses' enforceability.  While finding this clause
to be unambiguous, BMW's omission of the exclusivity language, which the company has seen fit
to include in previous contracts, does raise an obvious question.  See Caribe BMW, Inc. v.
Bayerische Motoren Werke Aktiengesellschaft, 821 F.Supp. 802, 818-819 (D.P.R. 1993)
(vacated on other grounds, 19 F.3d 745 (1st Cir. 1994)) (finding forum selection clause stating
"the *exclusive* jurisdiction for disputes concerning...this agreement is...Germany," drafted by
BMW, to be mandatory).

statutes delimiting penalties for the infringement of trade secrets. As BMW correctly points out, German criminal law is meaningless outside German borders.

The parties' intent to locate jurisdiction for this action solely in the courts of Munich is clear. This Court finds the parties' forum selection clause to be unambiguous and enforceable.

### 3. Enforcement of the Clause

Because the Court concludes the language of the forum selection clause is clear and mandatory, the only way for K&V to avoid the effect of the clause is to demonstrate it is unfair or unreasonable. See Excell, 106 F.3d at 321. Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." The Bremen, 407 U.S. at 15. The opposing party has the burden "to show tha trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes by deprived of his day in court." Id. at 18.

K&V argues that enforcement of the clause will completely deprive it of its day in court. As a result of BMW's alleged actions surrounding the airbag ignitor project, K&V has exhausted its financial resources and is severely in debt. K&V contends that, because German courts do not permit a contingency fee arrangement, the company's destitute status makes it unable to pursue a claim in German court.

The Court is not without sympathy for K&V, but does not believe that the company has met its "heavy burden" of proof. The Bremen, 407 U.S. at 19. The Tenth Circuit has reaffirmed the high bar a plaintiff must hurdle in order to deny enforcement of a foreign forum selection clause. Riley, 969 F.2d at 958. Other courts have consistently determined that cost and inconvenience are insufficient grounds to overcome the high burden established in The Bremen.

See Carnival Cruise Lines, 499 U.S. at 594-95; Paper Express, 972 F.2d at 758; Afram Carriers,

Inc. v. Moeykens, 145 F.3d 298, 304 (5th Cir. 1998) (enforcing Peruvian forum selection clause

against financially destitute family of deceased security guard).  While K&V may indeed have

limited resources, it has been able to retain excellent counsel to represent it in this forum.  See

Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R.

1007, 1012 (D.C.N.Y. 1985) (enforcing Australian forum selection clause against plaintiff in

bankruptcy).


## III.
## CONCLUSION

For the reasons set forth above, the Court finds the parties' forum selection clause

designating Munich as the exclusive site of jurisdiction to be mandatory and enforceable under

federal law.  As a result, venue in this Court is improper and the case is dismissed.  An order in

conjunction with this Memorandum will issue.


DATED at Albuquerque this 6th day of September, 2001.


BRUCE D. BLACK
United States District Judge

ATTORNEYS:

For Plaintiff:
      John W. Boyd, Albuquerque, NM
      David A. Freeman, Albuquerque, NM

      William Bright, Hartford, CT
      Patrick Caruso, Hartford, CT

For Defendant:
      Travis R. Collier, Albuquerque, NM
      Charles K. Purcell, Albuquerque, NM
      James P. Bieg, Albuquerque, NM